

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-13-2005

# USA v. Jihad

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1587

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Jihad" (2005). *2005 Decisions.* Paper 118.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/118

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1587

UNITED STATES OF AMERICA

v.

RASHID JIHAD,

Appellant

Appeal from Judgment of Sentence Entered
in the United States District Court
for the District of New Jersey
at Criminal No. 04-cr-00108
The Honorable William J. Martini

Re-Submitted Under Third Circuit L.A.R. 34.1(a)
December 13, 2005

Before:  SCIRICA, Chief Judge, VAN ANTWERPEN and ALDISERT, Circuit Judges.

(Filed  December 13, 2005)

OPINION OF THE COURT

ALDISERT, Circuit Judge.

On the merits of his conviction, Appellant Rashid Jihad presents a single issue. He asks us to conclude that the District Court erred by denying his request for an evidentiary hearing to determine the propriety of both the police officers' initial stop of him and the subsequent seizure of a firearm. Jihad was charged with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). We hold that the District Court did not err in denying Jihad's motion for an evidentiary hearing. Alternatively, if there was any error, it was harmless. Accordingly, we will affirm the conviction.[1]

I.

Because we write only for the parties, who are familiar with the facts, procedural history and contentions presented, we will not recite them except as necessary to the discussion.

II.

---

[1] Because the District Court stated an alternative sentence identical to that imposed under the Guidelines, we will also affirm Jihad's sentence. See United States v. Hill, 411 F.3d 425, 426 (3d Cir. 2005) ("[W]here, as here, a District Court clearly indicates that an alternative sentence would be identical to the sentence imposed under the Guidelines, any error that may attach to a defendant's sentence under Booker is harmless."). Jihad observes an apparent conflict between the District Court's oral pronouncement of the sentence, during which the Court stated the alternative sentence, and the "Supplemental Statement of Reasons" attached to the Judgment, in which the Court did not provide an alternative sentence. We have, however, previously held that, in the event of a conflict between an oral sentence and judgment, the oral sentence controls. See United States v. Chasmer, 952 F.2d 50, 52 n.2 (3d Cir. 1991). Accordingly, Jihad is not entitled to a remand for re-sentencing under United States v. Davis, 407 F.3d 162, 165 (3d Cir. 2005).

2

In response to an anonymous tip that a black male wearing blue jeans and a black shirt and riding a bicycle possessed a weapon, three police officers arrived at North 12th and Sixth Avenue, an area in Newark, New Jersey known for its high crime and gang activity. The responding officers immediately came upon Jihad, who was riding a bicycle and wearing blue jeans and a black shirt. According to Jihad's trial testimony, one of the officers, while still sitting in the cruiser, asked him, "What are you doing?" Jihad responded that he was a security guard in the area and that he was on break. When one of the officers began to exit the car, Jihad fled.[2] The officers then apprehended Jihad and frisked him. At that point, they discovered a firearm on his person.

Prior to trial, Jihad moved to suppress the gun as the fruit of an illegal search. He alleged that the police report was vague and that "the basis of the information which led to the stop of Mr. Jihad need[ed] to be more fully explored." The District Court denied the motion and refused to hold a hearing on the basis Jihad had not shown any contested issues of material fact.

III.

We review the District Court's decision whether to hold an evidentiary hearing on a motion to suppress under an abuse of discretion standard. See United States v.

---

[2] The officers' testimony differs slightly. According to their testimony, Officer Cardona's car door was already open and he was getting out of the vehicle when he told Jihad that he wanted to ask him a question. Jihad gave some type of response, the details of which are unclear, and then fled. According to the officers, the entire exchange lasted two to three seconds.

3

Calderon, 77 F.3d 6, 9 (1st Cir. 1996) ("The decision to hold an evidentiary hearing is committed to the discretion of the district court and our review is for abuse of that discretion."); United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000); United States v. Glass, 128 F.3d 1398, 1408-1409 (10th Cir. 1997).

Rule 12(b)(1) of the Federal Rules of Criminal Procedure requires that all "defects in the institution of the prosecution" be raised by pretrial motion. Rule 12(b)(1), Federal Rules of Criminal Procedure. Although Rule 12 does not by its terms specify when such a motion entitles a defendant to a pretrial evidentiary hearing, we have held that a defendant's moving papers must demonstrate a "colorable claim" for relief. United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996); see also United States v. Brink, 39 F.3d 419, 424 (3d Cir. 1994) (remanding for hearing where Brink alleged facts that, if true, "could violate a defendant's rights under the Sixth Amendment"). For a claim to be colorable, a defendant must do more than merely allege that a constitutional violation has occurred; the defendant must allege contested issues of fact material to the resolution of his constitutional claim. Voigt, 89 F.3d at 1067; Howell, 231 F.3d at 620 ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist.").

In his moving papers, Jihad did not allege that any violation of constitutional rights had occurred, nor did he contend that there were disputed facts with respect to his claim.

4

His motion stated:

> The basis of the information which led to the stop of Mr. Jihad needs to be more fully explored. The precise information relied upon by the dispatched police officers is unclear. It is not certain how much time elapsed between the initial report and the subsequent "stop" of Mr. Jihad.
>
> [T]he circumstances regarding the actual seizure of the firearm is [sic] plainly confusing. There is no way to determine if the firearm was taken from the person of Mr. Jihad or recovered in another manner. There is no effort made to describe the search of Mr. Jihad, if any, made by police officers. A hearing is necessary to more fully develop these issues.

Such assertions do not identify a specific issue of material fact that is in dispute. There is no allegation that the officers engaged in an illegal search or otherwise obtained the concealed weapon illegally. Accordingly, on the basis of Jihad's moving papers we are unable to ascertain any material issue of fact for the District Court to resolve at an evidentiary hearing.

IV.

On appeal, Jihad principally relies on the Supreme Court's decision in Florida v. J.L. in arguing that an evidentiary hearing was necessary to determine whether the anonymous tip that caused the officers to arrive at the scene was sufficiently reliable to establish reasonable suspicion. See Florida v. J.L., 529 U.S. 266 (2000) (holding that an anonymous tip lacked sufficient indicia of reliability to establish reasonable suspicion for an investigatory stop). Even if Jihad were correct that the circumstances surrounding the

5

anonymous tip were sufficiently suspect to warrant an evidentiary hearing, Jihad's claim would still fail. As the District Court correctly found, it was Jihad's flight from the police, rather than the anonymous tip, that gave the police reasonable suspicion to stop and frisk him.

The police report indicated that the officers came upon Jihad late at night in a high-crime area after being dispatched on the basis of an anonymous tip reporting a man with a gun. Jihad fit the description, and after a brief exchange with the officers, he fled. After they were able to apprehend him and conduct a pat-down search, he was found to possess a concealed weapon.

Jihad concedes that the officer did not need reasonable suspicion to ask him a question. See United States v. Valentine, 232 F.3d 350, 359 (3d Cir. 2000) ("[I]t is well established that officers are allowed to ask questions of anyone – and gun owners are no exception – without having any evidence creating suspicion."). Although questioning may constitute a seizure when an officer makes a showing of authority and the suspect submits, Jihad's brief exchange with the officers and his subsequent flight do not demonstrate that he "submit[ted] in any realistic sense to the officers' show of authority." *Id.* at 358-359 (holding that suspect's momentary compliance with police order and giving of his name was not sufficient to trigger a seizure); *cf. United States v. Washington,* 12 F.3d 1128, 1132 (D.C. Cir. 1994) (holding that defendant was not seized when he stopped his car at the curb in response to police commands, but then sped away

6

when an officer approached on foot).

Appellant's counsel has also not disputed that Jihad's presence in a high-crime area, taken together with his unprovoked flight, created reasonable suspicion justifying an investigatory stop under Terry v. Ohio, 392 U.S. 1 (1968). See Illinois v. Wardlaw, 528 U.S. 119, 124 (2000) (holding that suspect's unprovoked flight from officers in a high-crime area supported reasonable suspicion that suspect was engaged in criminal activity and justified stop).

Accordingly, Jihad's contention that an evidentiary hearing was necessary to determine whether the anonymous tipster was reliable or the tip was "stale" is without merit. The District Court correctly concluded that the anonymous tip was immaterial to the constitutionality of Jihad's stop because he was not actually seized until after he fled. The District Court therefore properly denied his motion for an evidentiary hearing.

V.

Moreover, in light of the evidence adduced at trial, any error arising from the District Court's failure to hold an evidentiary hearing in this case is harmless. See Voigt, 89 F.3d at 1068 (examining the entire record to determine whether failure to order a suppression hearing was harmless); see also Gov't of Virgin Islands v. Williams, 739 F.2d 936, 939 (3rd Cir. 1984) ("[In reviewing the decision to deny a motion to suppress] this court may look at the entire record; it is not restricted to the evidence presented at the suppression hearing where the motion was denied."). Although we are mindful that

7

suppression hearings and trials serve markedly different purposes and that a defendant may have no incentive at trial to challenge evidence supporting the pretrial ruling, see 5 W. LaFave, Search and Seizure § 11.7(d), at 417 (3d ed. 1996), we are satisfied that the testimony at trial and the parties' written submissions provided the District Court with sufficient evidence to determine that Jihad's constitutional rights were not violated by the officers' search and seizure of the firearm.

The officers' testimony at trial reaffirmed the police report and confirmed that the officers had reasonable suspicion to stop and frisk Jihad and that the firearm was properly found during the pat-down search. Jihad's testimony at trial, although contradicting that of the three officers in some respects, did not create a material issue of fact with respect to any violation of his rights. He admitted that he was in a high-crime area and that he fled from police on a bicycle. Jihad's major contradiction of the officers' testimony was that the firearm was found in a nearby driveway, rather than on his body pursuant to a pat-down search.

Even if we were to credit Jihad's testimony, it would weigh *against* holding a suppression hearing. To assert a Fourth Amendment challenge to a search and seizure, a defendant must show that he has a legitimate expectation of privacy in the area of search. Rakas v. Illinois, 439 U.S. 128, 143 (1978). Jihad has not alleged, nor can he show, that he had an expectation of privacy in the firearm or in the public driveway in which he contends the gun was recovered. As a result, regardless of whether we credit his version

of the events or that of the officers, no violation of his constitutional rights occurred.

Accordingly, any denial of a suppression hearing was, at most, harmless error.

## VI.

We have considered all arguments raised by the parties and conclude that no further discussion is necessary. We will affirm the judgment of conviction and sentence.

_____